# IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE DISTRICT OF PUERTO RICO

IN RE:

**WARREN STUART ACEVEDO HERNANDEZ**

**Debtor(s)**

CASE NO.  15-05744

**Chapter 12**

**FILED & ENTERED ON 2/23/2016**

## OPINION & ORDER

Before the court is the *Joint Stipulation Regarding Treatment of BPPR's Secured Claim under Debtor's Chapter 12 Plan* filed by the Debtor and Banco Popular de Puerto Rico ("Joint Stipulation"), the *Chapter 13 Trustee's ("Trustee") Memorandum of Law in Support of Trustee's Objection to the Confirmation of the Plan dated September 14, 2015* ("Memorandum"), and *Banco Popular de Puerto Rico's ("BPPR") Memorandum of Law and Response to the Trustee's Objection to the Confirmation of the Chapter 12 Plan* [Dkt. No.'s 55, 66 & 84]. After several procedural turns[1] not relevant to the Court's analysis, what remains pending is the treatment of BPPR's secured claim

---

[1] On December 8, 2015, the court vacated and set aside the November 17, 2015 Order approving the Joint Stipulation upon the objection filed by the chapter 12 Trustee. [Dkt. No. 82] On December 10, 2015, BPPR filed their Memorandum of Law in response to the Trustee's objection [Dkt. No. 84].

1

as set forth in the Joint Stipulation.[2] The Trustee's objection is premised on three (3) main arguments:

- Whether payments to secured creditor BPPR, provided for by the chapter 12 plan, which debt has been modified using 11 U.S.C. § 1222(b)(2), should be made by the trustee, or could be made directly to the secured creditor by the debtor. 11 U.S.C. §§ 1225(a)(5)(B)(ii) and 1226(c).

- Whether Debtor, by making payments directly to secured creditor instead of payments through the Trustee, to a claim which has been impaired under the plan terms, can avoid the payment of the Standing Trustee Fee fixed by the Attorney General pursuant to 28 U.S.C. § 586(e), and which collection is required by 11 U.S.C. § 1226(b)(2).

- Whether the treatment of BPPR's claim No. 4 under Class 3 of the proposed plan violates the plan mandatory requirement of 11 U.S.C. § 1222(a), causing a failure to comply with § 1225(a)(1) as well as the good faith confirmation requirements under § 1225(a)(3).

In sum, the Trustee argues that by providing direct payments and conferring "unwarranted concessions" to BPPR the plan fails to comply with 11 U.S.C. §§ 1222(a), 1226(a), (b)(2), 1225(a)(1) and the good faith requirement for confirmation of section1225(a)(3).

The parties agree that there are no cases in the First Circuit that squarely address this particular issue. However, other circuits have adjudged that debtors are allowed to provide for direct payments to their creditors under their reorganization plans. There is no provision in Chapter 12 of the Bankruptcy Code that prohibits direct payments from debtors to creditors. See In Re Pianowski, 92 B.R. 225 (Bankr.W.D. Mich.1988); In Re Land, 82 B.R. 572 (Bankr.D.Colo. 1988); In Re Foster, 670 F. 2d. 478 (5th Cir.1982). Courts have generally concluded that section 1225 authorizes direct debtor payment of all secured claims to the extent that they are in compliance with the requisites of

---

[2] On February 19, 2016, creditor Condado 4, LLC filed a transfer of claim notice as to BPPR's claim

2

sections 1225(a)(5)(A)-(C). See In Re Overholt, 125 B.R. 202 (S.D. Ohio 1990).

Courts have also held that impaired secured claims that debtors continue to pay outside of bankruptcy are permissible. Id. Moreover, courts have determined that since the trustee cannot continue to make payments on secured claims after the plan period expires, and it is the debtor that must assume this task, that it is clear that Congress intended to allow debtors to make direct payments from the effective date of the plan. Id. *quoting* 5 Collier on Bankruptcy ¶ 1226.01, at 1226-4 (C. Cyr, H. Minkel, R. Rogers, H. Sommer, W. Taggert & A.Winkler eds., 15th ed.). ("Rather than have the debtor substitute for the trustee after the trustee's dismissal, it makes more sense for the debtor to make such payments directly from the outset."). In his Memorandum, the Trustee concedes that 11 U.S.C. § 1225(a)(5)(B)(ii) contemplates that for "each allowed secured claim provided for by the plan," property may be distributed under the plan by the trustee or the debtor, and further recognizes the court's discretion, pursuant to sections 1226(c) or 1225(a)(5)(B)(ii), to authorize direct payments to the creditors by the debtor, under the terms of a confirmed chapter 12 plan.

Other cases have provided a set of factors to be considered when allowing the debtor to make a direct payment rather than through a trustee. In In Re Perez, 339 BR 385, 289 (Bankr. S.D. Tex. 2006), the court explained that the rationale for the chapter 13 trustee to serve as the disbursing agent is:

- (a) in order for consumer debtors to successfully reorganize, they need to be shielded from all their creditors so that they can focus on generating maximum income to pay the trustee;

---

number 4 [Dkt. No. 114]. All references in this Opinion & Order are to BPPR as per the motions under review. However, the court acknowledges that the transferee of this claim is Condado 4, LLC.

- (b) in order for creditors to timely receive payments on their claims without having to spend undue time and expense, they need to avoid having to deal extensively with troubled borrowers and their attorneys; and

- (c) the trustee serves as a buffer between debtors and creditors by assuming the responsibility for receiving payments from debtors and remitting funds to claim holders.

In the case before this Court, these factors are not material. It is important to note that: (1) the debt is a commercial debt not a consumer debt; (2) both BPPR and the Debtor have a high level of sophistication to manage the payments; (3) the payment is being made by Suiza Dairy directly to both BPPR and the Trustee; and (4)Debtor has no need to be shielded from BPPR, nor is there a need for the Chapter 12 Trustee to serve as a buffer. BPPR will receive their payments in a more timely manner through Suiza Dairy. The alternative would have BPPR wait for the Trustee to receive the payments from Suiza Dairy and then wait for the Trustee to pay BPPR.

Together with the above criteria, the court in In re Perez, interpreting identical provisions in chapter 13 cases (11 U.S.C. § 1326(c)), also compiled 21 factors to consider using the trustee as the disbursing agent. Id. at 409-10.[3] Essentially, it is the Trustee's position that when a secured claim is

---

[3] "(1) the degree of responsibility of the debtor, as evidenced by his past dealing with his creditors, *Foster,* 670 F.2d at 487; (2) the reasons contributing to the debtor's need for filing a Chapter 13 petition and plan, *Id.*; (3) any delays that the trustee might make in remitting the monthly payment to the targeted creditor; *Id.*; (4) whether the proposed plan modifies the debt, *In re Reid,* 179 B.R. 504, 508 (E.D.Tex.1995) (citing *In re Gregory,* 143 B.R. 424 (Bankr.E.D.Tex.1992)); (5) the sophistication of the targeted creditor, *Id.*; (6) the ability and incentive of the creditor to monitor payments, *Id.*; (7) whether the debt is a commercial or consumer debt, *Id.*; (8) the ability of the debtor to reorganize absent direct payments, *Id.*; (9) whether the payment can be delayed, *Id.*; (10) the number of payments proposed to pay the targeted claim, *Id.*; (11) whether a direct payment by the debtor under the proposed plan will impair the trustee's ability to perform his standing trustee

4

modified in a chapter 12 case using the Code provisions of 11 U.S.C. §§ 506(a), 1222(b)(2) and 1225(a)(5), such payments, when made from a debtor's future income, should be made by the trustee to allow the trustee to comply with his duty to control and supervise the funds that will be necessary for the execution of the plan during the term of the trustee appointment. The Trustee contends that a direct payment to BPPR, as proposed, impairs his duty under section 1222(a).

This court disagrees with the Trustee's position in this case with this particular set of facts. The pay arrangement proposed under the plan, as supplemented on October 19, 2015 [Dkt. No. 51], is not in contravention with the Perez factors with the possible exception of the effect upon the Trustee's salary or funding the U.S. Trustee system *i.e.*, "whether a direct payment by the debtor under the proposed plan will impair the trustee's ability to perform his standing trustee duties"; "the potential burden on the trustee" and "the possible effect upon the trustee's salary or funding the U.S. Trustee system." In this case, the direct payments will cause the Chapter 12 Trustee to miss out on fees in the approximate amount of $30,745.02. However, the Trustee has not stated how such lack of fee will impair its ability to perform as the Standing Trustee, or what effect it will have on his salary or funding the U.S. Trustee system. The Trustee has not explained or provided any evidence that by

---

duties, *Id.*; (12) unique or special circumstances of a particular case, *Id.*; (13) the business acumen of the debtor, *In re Genereux,* 137 B.R. 411, 412–13 (Bankr.W.D.Wash.1992) (citing *In re Pianowski,* 92 B.R. 225, 233–34 (Bankr.W.D.Mich.1988) (enumerating thirteen factors to be considered in determining whether to allow a Chapter 12 debtor to make direct payments)); *In re Bettger,* 105 B.R. 607, 609 Bankr.D.Or.1989) (reducing the *Pianowski* factors to eight and applying those factors to determine whether to permit a Chapter 13 debtor to make direct payments); (14) the debtor's post-filing compliance with statutory and court-imposed duties, *Id.*; (15) the good faith of the debtor, *Id.*; (16) the plan treatment of each creditor to which a direct payment is proposed to be made, *Id.*; (17) the consent, or lack thereof, by the affected creditor to the proposed plan treatment, *Id.*; (18) the ability of the trustee and the court to monitor future direct payments, *Id.*; (19) the potential burden on the trustee, *Id.*; (20) the possible effect upon the trustee's salary or funding the U.S. Trustee system, *Id.*; and (21) the potential for abuse of the bankruptcy system, *Id.*"

not receiving the payment impairs his ability to perform his duties. There remain approximately $11,000.00 in fees to be collected by the Trustee through this plan.

This Court notes that the legislative intent of chapter 12 was to provide farmers with an inexpensive and less complex alternative to chapter 11 filings, and given such intent, it follows that allowance of direct payments by a debtor to its creditors in some circumstances would serve this end. The reduction of the aggregate amount of the trustee's fee would reduce the cost of reorganization to the debtor. See In re Overholt, 125 B.R. 202, 208 (S.D. Ohio 1990).

Lastly, the court turns to the Trustee's claim that the treatment of BPPR's claim no. 4 under class 3 of the proposed chapter 12 plan violates the plan mandatory requirement of 11 U.S.C. § 1222(a), causing a failure to comply with § 1225(a)(1) as well as the good faith confirmation requirements under § 1225(a)(3). The Trustee argues that Debtor accommodated concessions to BPPR in bad faith. However, as explained in the factual proceedings of this case, the increase in the amount to be paid to BPPR from the original plan, arose from two different appraisals. After negotiations took place, Debtor and BPPR agreed to split the difference and arrived at the secured portion of $827,500.00. There is no evidence presented by the Trustee, nor present in the record of the case, that points to any activity being undertaken in bad faith. The Joint Stipulation appears to have been done in good faith with concessions by both parties to reach a reasonable number using the appraisals the parties had in their possession.

The Trustee argues that the following provision is contrary to the Bankruptcy Code and is

6

an intrusive concession negotiated by BPPR:

> If at any moment during the payment of the restricted loan, Debtors' results of operations exceed projections, Debtors will pay 50% of the net received above projections to Banco Popular. The payment of 50% of the net received above projections will be applied to the principal of the loan.

The Trustee argues that such language impedes his control over the future income of the Debtor. However, such analysis is confusing. Debtor is applying his future income to the use of the plan. This provision states that if Debtor produces better than anticipated, such amounts shall be divided equally between BPPR and Debtor. In the absence of this clause, better than anticipated earnings would only go to Debtor and none would be available to the Trustee to make any additional payments. In any event, the amounts specified here are only after the Trustee is paid.[4]

The court concludes that direct payments from debtors to creditors are permissible in chapter 12 cases. In this case, an analysis of the factors considered by courts in whether such direct payments are appropriate, weigh in favor of allowing the direct payments. Direct payments allow Debtor to have a less expensive chapter 12 bankruptcy, and give him the opportunity to retain his land and milk quota if he complies with the terms of the plan. Given that BPPR receives its payment through Suiza Dairy, Inc. as well, there is no need for the Trustee to assume the duty of disbursing to BPPR. Finally, there exists no evidence that the terms negotiated between Debtor and BPPR were done in bad faith.

---

[4] Language like the above, has in fact been proposed by this Court, see In re KWJ Farm Inc., 13-01322-BKT12, where the court confirmed a chapter 12 plan over BPPR's objection to the plan's confirmation. When BPPR argued that Debtor had an ability to make a higher payment, this Court proposed that any of Debtor's income over projections should be split between BPPR and the Debtor.

As such, the Joint Stipulation [Dkt. No. 55] is approved. The Debtor shall amend his plan to include the treatment of BPPR's secured claim as set forth therein within fourteen (14) days. Once filed, the court will schedule a hearing on confirmation. Clerk to follow up.

SO ORDERED

San Juan, Puerto Rico, this 23rd day of February, 2016.

Brian K. Tester
U.S. Bankruptcy Judge